**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jon Saltzman, | No. CV-25-00223-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of the Interior, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss Third Amended Complaint (Doc. 26, MTD), to which *pro se* Plaintiff Jon Saltzman filed a Response (Doc. 23, Resp.) and Defendants filed a Reply (Doc. 24). For the reasons set forth below, the Court grants Defendants' motion and dismisses Plaintiff's Third Amended Petition for Judicial Review ("TAP") (Doc. 17-1, TAP) with leave to amend.

**I.   BACKGROUND**

The Mining Law of 1872, 30 U.S.C. §§ 21–54, allows United States citizens to prospect for valuable minerals on federal land. 30 U.S.C. § 22. A miner who finds valuable minerals on public land may "locate" his claim, which confers unto him an "unpatented mining claim." 30 U.S.C. § 22. No unpatented mining claim can exceed 20 acres in size unless the claim is formed under an association of co-locators, in which case a claim may be aggregated up to 160 acres with eight co-locators. 43 C.F.R. § 3832.22. In forming an association, the co-locators cannot be "dummy" or "fictitious" locators used as pretext for a miner to obtain a larger mining claim for his own benefit. *Id*. Once properly located and

recorded, the miner's unpatented claim provides him the right to "occupy" the claim, to mine the minerals freely, and even to transfer the claim by sale, assignment and inheritance. 30 U.S.C. § 22; 43 C.F.R. § 3833.31.

On January 5, 2005, Herman P. Fain and seven others—each of whom were a relative or friend of Mr. Fain—located two 160-acre unpatented mining claims by association (the "Fain Claims"). *Jon Saltzman*, No. 2019-0153, 199 Interior Dec. 1, 4 (IBLA 2024).[1] In February 2005, Jeff Hill and seven others—each of whom were relatives of Mr. Hill—located five 160-acre unpatented mining claims by association (the "Hill Claims"). By June 2005, Mr. Hill directly transferred the Hill Claims by quit claim deed to Plaintiff directly. *Id*. In December 2006, Plaintiff acquired the Fain Claims by quit claim deed from a third party that previously acquired those claims from the Fain group in April 2005. *Id*. Until 2012, Plaintiff occupied and mined these seven unpatented mining claims (the "Seven Claims"),[2] duly paid an annual maintenance fee, and filed and maintained the requisite notice, occupancy, and operations plans with the Bureau of Land Management ("BLM").

In 2012, the annual maintenance fees for Plaintiff's mining claims reportedly skyrocketed after Congress passed the Consolidated Appropriations Act of 2012 ("CAA") that changed the fee from "per claim" to "per 20-acre." *Saltzman v. United States*, No. 13-1014, 2024 U.S. Claims LEXIS 753, at *4–6 (Fed. Cir. Apr. 11, 2024), *vacated*, 2024-1785, 2025 WL 271615 (Fed. Cir. Jan. 23, 2025). In 2013, Plaintiff failed to pay the annual fee, and the BLM determined that he forfeited those claims. *Id*. Plaintiff then filed suit in the Federal Claims Court alleging that the CAA's fee change constituted a Fifth Amendment taking without just compensation and demanded $219,733,270 in damages. *Id.* at *2.

. . .

---

[1] IBLA is the Interior Board of Land Appeals, an appellate review body separate and independent from the Department of Interior bureaus and offices whose decisions it reviews.

[2] Plaintiff held claim to 96 other mining claims contiguous with the Seven Claims at issue. Those other mining claims are subject to an unconsolidated action before the District Court of Arizona and need not be discussed here. *See* No. 2:25-cv-00020-SPL.

Those proceedings were stayed in April 2015 so the BLM could conduct a multi-phase analysis of the mining claims to determine whether Plaintiff's mining claims were valid property interests. *Id.* at *8. In the first phase, the BLM would establish whether the mining claims were properly located and recorded. If so, the BLM would evaluate those mining claims in the second phase for "valuable mineral deposits." *Id.* at *9. If an unpatented mining claim survived both phases, Plaintiff's takings claim would return to the Federal Claims Court for adjudication. *Id.* at *9–10.

The Seven Claims survived the first phase of BLM's analysis. However, prior to testing the lands for "valuable mineral deposits" under the second phase, the BLM alleged that the Seven Claims were void *ab initio* because they were located by "dummy locators." *Saltzman*, 199 Interior Dec. at 5. The BLM subsequently initiated a contest proceeding before an administrative law judge ("ALJ"). *Id*. After a two-day hearing in which Plaintiff and the BLM had the opportunity to present witnesses, cross-examine witnesses, and produce documents, the ALJ determined that the Seven Claims were, in fact, void *ab initio* in decision numbers AZA-37258 and AZA-37259 ("ALJ Decisions"). *Id*.

Plaintiff appealed the ALJ Decisions and the IBLA affirmed them in decision number 2019-0153 ("IBLA Decision"). *Id*. Without pause, Plaintiff moved for the IBLA to reconsider its decision number 2019-0153, which the IBLA denied in its unpublished order on November 4, 2024.

On January 24, 2025, Plaintiff petitioned the District Court of Arizona to review the IBLA Decision. (Doc. 1.) Since filing this action, Plaintiff has amended his petition three times. (*See* Docs 5, 9, 17-1.) Defendants now move to dismiss Plaintiff's TAP based on lack of subject matter jurisdiction and failure to state a claim for which relief may be granted.

## II.   SUBJECT MATTER JURISDICTION

### A.   Legal Standard

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject

matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction.").

When, as here, a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, courts must accept all material, non-conclusory allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). A *pro se* plaintiff's pleadings must be construed liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se plaintiff's] complaint, however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal quotation marks omitted); *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) ("[W]e have a duty . . . to construe pro se pleadings liberally.") (citations and internal quotation marks omitted). Nonetheless, the burden of proof is on the party asserting jurisdiction, even if *pro se*, to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

**B.     Analysis**

Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff cites to an irrelevant law as one that confers jurisdiction to this Court. (MTD at 13.) That law is 30 U.S.C. § 1719(j), which authorizes judicial review of final administrative decisions imposing civil penalties on persons conducting oil and gas operations under the Federal Oil and Gas Royalty Management Act of 1982. (MTD at 13–14.) Defendants also

argue that Plaintiff fails to mention "the Mining Law or its implementing regulations that form the basis for the agency's decision." (MTD at 2.) According to Defendants, Plaintiff basing the Court's jurisdiction on 30 U.S.C. § 1719(j) amounts to a fatal defect under Rule 12(b)(1), and even if it does not, Plaintiff fails to allege sufficient facts to establish subject matter jurisdiction. (MTD at 13–14.) The Court disagrees.

Once again, Defendants' jurisdictional argument is predicated upon an overly constrained reading of Plaintiff's petition. In his TAP, Plaintiff identifies the IBLA Decision by direct reference to "IBLA 2019-0153." (TAP at 1.) Plaintiff then states that he seeks judicial review of that decision under the Administrative Procedure Act ("APA"), specifically citing to 5 U.S.C. §§ 701–06. (TAP ¶¶ I, IV, V.) With clear regard to § 706, Plaintiff alleges that the IBLA Decision and underlying actions of the BLM were arbitrary, capricious, and without observance of process as law requires. *See, e.g.*, 5 U.S.C. § 706(2). (TAP ¶¶ II, V–VII, XIII.) Despite Defendants' contention otherwise, Plaintiff expressly alludes to the Mining Law and related federal regulations therefrom to support his allegations. (TAP ¶¶ VI–VII.) Defendants do not dispute that this Court is authorized to review the IBLA Decision under the APA and they even recite the abundant law endowing the Court with such authority. (MTD at 7–8.) Because "[p]leadings must be construed so as to do justice," the Court finds it has subject matter jurisdiction in fact to review the IBLA Decision under the APA, and Plaintiff pleads sufficient allegations on the face of the TAP to confer jurisdiction unto this Court. Fed. R. Civ. P. 8(e); *see also Hughes*, 449 U.S. at 9 (instructing that a *pro se* plaintiff's pleadings should be construed liberally).

### III. STATING CLAIMS FOR WHICH RELIEF MAY BE GRANTED

#### A. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for

failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). When the nonmoving party is a *pro se* litigant, courts should construe the pleadings liberally. *See Hughes*, 449 U.S. at 9; *Zichko*, 247 F.3d at 1020.

Even if *pro se*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("[A] liberal interpretation of a [] complaint may not supply essential elements of the claim that were not initially pled."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.     Analysis**

Plaintiff brings this action under the APA and challenges the IBLA Decision as "[a]rbitrary and capricious and [w]ithout [o]bservance of [p]rocedure [r]equired by [l]aw with Saltzman subject placer mining claims." (TAP ¶ II.) Defendants move to dismiss Plaintiff's TAP under Rule 12(b)(6) for two reasons: (1) Plaintiff fails to demand relief that

this Court may grant; and (2) Plaintiff fails to state a claim arising under the APA. (MTD at 14–15, 18.)

### i. Failure to Demand Relief the Court May Grant

In pleading his prayer for relief, Plaintiff "asks the Court to find subject mining claims valid at the time of the 'taking' Sept. 1, 2012" and he seeks "a reversal of the void claims to valid claims." (TAP ¶¶ II, XIII.) Defendants argue that the relief Plaintiff seeks is not within the Court's power to grant under the APA. (MTD at 15–18.) The only relief the Court may grant is limited under § 706 to "hold unlawful and set aside agency action, findings and conclusions." (*Id.*)

Defendants equate Plaintiff's failure to request the narrow relief afforded by § 706 to a terminal flaw under Rule 12(b)(6). The Court disagrees. Courts routinely construe a *pro se* plaintiff's pleadings liberally, including his prayer for relief. *Preayer v. Ryan*, No. CV-15-00069, 2017 U.S. Dist. LEXIS 83188, *16 (D. Ariz. May 30, 2017) (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). The Federal Rules of Civil Procedure also permit a court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). There is no doubt that Plaintiff aspires to litigate his takings claim before the Federal Claims Court. Plaintiff cannot proceed, however, unless the IBLA determines that some or all of Plaintiff's mining claims, including these Seven Claims, are valid. The calculus is clear: for Plaintiff to seek his ultimate relief (*e.g.*, litigate his takings claim), the now-final IBLA decision would have to be set aside and remanded for further proceedings. Defendants acknowledge as much in their Motion to Dismiss, writing that a remand could result in a dismissal of the BLM's contest, thereby requiring the BLM to continue administering its multi-phase analysis of Plaintiff's mining claims. (MTD at 17.) Remanding the IBLA decision is a form a relief this Court may grant under § 706, and the fact that Plaintiff does not expressly request this relief does not deprive him of it especially when he alleges that he is entitled to *some* form of relief under the APA.

### ii. Failure to State a Claim Arising Under the APA

Next, Defendants move to dismiss Plaintiff's TAP for failure to state a claim. Review of Plaintiff's claims must take place within the confines of the APA. *Hoefler v. Babbitt*, 139 F.3d 726, 728–29 (9th Cir. 1998) ("The APA is "the sole means for challenging the legality of federal agency action . . .") (internal quotation marks and citation omitted). The APA requires a reviewing court to set aside agency actions found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2). Under § 704 of the APA, judicial review includes "preliminary, procedural, or intermediate agency action . . . on the review of the final agency action." The APA defines agency action broadly to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

As relevant here, the question before this Court is whether Plaintiff pleads sufficient facts that, assuming the truth of those facts, would allow this Court to reasonably infer that the IBLA Decision or the underlying preliminary, procedural, or intermediate agency action were arbitrary, capricious, an abuse of discretion, without process, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(2)(A), (D). Agency action is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Alternatively, a court may overturn an agency decision under the abuse of discretion standard if the agency failed to justify its final decision. *See id.* at 48. Agency decisions must also be supported by substantial evidence that is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *De la Fuente v. Fed. Deposit Ins. Corp.*, 332 F.3d 1208, 1220 (9th Cir. 2003) (citation omitted).

The substance of Plaintiff's allegations can be sorted into three broad categories: (1) the ALJ relied on deficient witness testimony at the contest hearing; (2) the BLM failed to provide Plaintiff timely notice and an opportunity to cure the location defects of the Seven Claims before 2012; and (3) the BLM's eventual contest of the Seven Claims' validity was time-barred by three statutes of limitation.

As to the first category, Defendants concede that "the [TAP] does appear to dispute the credibility of witness testimony during the contest hearing, which was key to the ALJ's determination," but argue nonetheless that Plaintiff fails to make "direct citation or reference to the challenged IBLA Decision . . . or otherwise states why the agency's action declaring the mining claims void *ab initio* is erroneous." (MTD at 19.) In response, Plaintiff makes no discernable references to the specific parts of the IBLA Decision that he challenges; rather, he expounds upon the ALJ's reliance on purportedly inadequate witness testimony and "hearsay." (Resp. at 12–15.)

Plaintiff makes only one allegation[3] disputing witness testimony in the TAP: "In OHA Court asking locators the direction to a claim is hardly proof of interest in a claim after the locators had not owned the subject claim for 14 years." (TAP ¶ XI.) There are no other allegations regarding the form and substance of the contest proceedings, ALJ Decisions, and IBLA Decision. Without more, the Court cannot reasonably infer that the IBLA Decision or underlying agency actions were arbitrary, capricious, an abuse of discretion, without process, or otherwise not in accordance with the law simply because the ALJ asked the locators directions to a mining claim.

As to the second category, Plaintiff contends that the BLM failed to provide notice of—and an opportunity to cure—the invalidity of the Seven Claims before 2012. (TAP ¶¶ V–VII, XII.) Had the BLM observed the notification and cure procedure like it did in *Jim Pressley*, 192 IBLA 102 (2018),[4] Plaintiff alleges "we would not have been in court

---

[3] Plaintiff later develops his argument that the witness testimony was deficient in his Response (Resp. at 12–15), but no amount of post-pleading augmentation can save a deficient pleading.

[4] In *Pressley*, the BLM suspected the co-locators were "fictitious" after receiving inconsistent, multi-party recordings of same mining claim location. *Id.* at 103–04. After the BLM issued notices to the purported co-locators without response, the mining claims

- 9 -

over the past 10 years or so." (TAP ¶ X; *see generally* TAP ¶¶ VI–VII.) Plaintiff does not allege, however, that earlier notice and opportunity to cure the defect of the Seven Claims would have achieved a different outcome except that the "locators' testimony would be much different." (TAP ¶ X.) This assertion is, at best, highly speculative, and Plaintiff sets forth no facts supporting his conclusion that the locators would have testified differently in 2005 than they did recently. There can be no reasonable inference drawn on the facts as alleged, even assuming their truth, that the BLM's purported failure to provide Plaintiff earlier notice and opportunity to cure the location defect amounted to an error that warrants relief under § 706.

Even if Plaintiff were to include such allegations, the TAP remains infirm. Plaintiff does not allege that BLM failed to act at all; rather, Plaintiff alleges that BLM failed to act *at the right time* (*e.g.*, before the "taking" occurred in 2012). And yet, Plaintiff does not reference any code, regulation, or statute that would have mandated the BLM to issue a notice and opportunity to cure the Seven Claims before 2012. For example, Plaintiff cites to 43 C.F.R. § 3830.93 that permits a mining claim holder to "correct curable defects when BLM gives you notice," but it does not dictate when BLM must give that notice. (*See* TAP ¶ VI.) Other parts of the Code of Federal Regulation cited by Plaintiff are equally reticent. (*See* TAP ¶ VI (citing 43 C.F.R. § 3830.94), ¶ VII (citing 43 C.F.R. § 3833.32).) And while Plaintiff alleges that BLM geologists and inspectors interacted with Plaintiff and accepted his reports for occupancy and use (TAP ¶ VII), such facts do not establish that the BLM failed to observe its own process for validating the location and recordation of the Seven Claims, or that the actions of BLM are arbitrary or capricious. Plaintiff's many assertions that BLM was required to resolve the location defect before accepting Plaintiff's payments and plans for the Seven Claims is nothing more than a legal conclusion. Plaintiff fails to allege sufficient facts that the BLM's failure to act before 2012 is arbitrary, capricious, abuse of discretion, without lawful process, or is otherwise unlawful.

. . .

---

were deemed forfeited. *Id.* at 104–05. *Pressley* is substantively and procedurally distinguishable from the proceedings at issue here.

As to the third category, Plaintiff broadly alleges that the BLM was time-barred from challenging the validity of the seven mining claims under 18 U.S.C. § 3282(a), 28 U.S.C. § 1658(a), and 28 U.S.C § 2462. (TAP ¶ IX.) Defendants argue that Plaintiff fails to "allege any facts to support application of these statutes of limitations to this proceeding that might entitle him to relief." (MTD at 15.) The only connection Plaintiff makes between the three statutes of limitation and the IBLA Decision is that "Judge Pearlstein OHA Court, Department of the Interior, indicated the statute of limitation did not apply in his court, although it may apply in another court." (TAP ¶ VIII.) Plaintiff makes no allegation that the IBLA or ALJ Decisions rejecting Plaintiff's statute of limitation argument violated § 706; instead, he appears to allege that the statutes of limitation should apply in *this* Court. (TAP ¶¶ IX, XI ("Court should consider the BLM not recognizing the statute of limitations . . ."). Such a claim is outside the scope of review under the APA.

## IV. CONCLUSION

Having failed to state a claim arising under the APA, the Court grants Defendants' Motion to Dismiss the TAP. While the TAP marks Plaintiff's fourth pleading in this matter, this is the first instance in which Plaintiff's pleading is dismissed for failure to state a claim. Therefore, the Court will grant Plaintiff leave one more time to amend the TAP and attempt to cure the defects identified above. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). As it did before, the Court reminds Plaintiff that he must comply with the procedural rules governing pleadings, including Rule 10(b)'s requirement that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 26).

**IT IS FURTHER ORDERED** dismissing Plaintiff's Third Amended Petition for Judicial Review (Doc. 17-1) with leave to amend. Plaintiff may file a Fourth Amended Petition for Judicial Review, if he so chooses, within twenty-one days of the date of this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter without further order of the Court if Plaintiff does not file an amended petition within twenty-one days of the date of this Order.

Dated this 7th day of October, 2025.

Honorable John J. Tuchi
United States District Judge